**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Our Pet Project LLC,

Plaintiff,

v.

International Paper Company,

Defendant.

Case No. 22-cv-1209

Judge Mary M. Rowland

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Our Pet Project, LLC, brings suit against Defendant, International Paper Company, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), unjust enrichment and breach of a contract. Defendant moves to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendant's Motion to Dismiss [11] is granted.

## I. Background

The following factual allegations taken from the complaint (Dkt. 1) are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

**Thrive Production and Marketing**

Plaintiff, Our Pet Project (Pet Project), is the creator of a sustainable pet feeding tray known as "The Original mine Pet Platter." (Pet Platter) Dkt. 1 ¶ 5. Pet Project began manufacturing the Pet Platter in July 2016. *Id*. at ¶ 6. Pet Project set out to manufacture its Pet Platter from a sustainable resource to create a BPA-free

1

product, consisting of a more natural material than typical plastics being used by other pet-industry competitors; strong and safe enough to endure pet interaction with no exposure to dangerous toxins; non-porous and dishwasher-safe; and made in the United States. *Id*. at ¶ 10.

Pet Project learned about THRIVE, a composite material available from a company called Weyerhaeuser. *Id*. at ¶ 11. Weyerhaeuser represented that its THRIVE product consisted of a specific combination of ingredients, including cellulose fiber derived from wood pulp, mixed together in a proprietary formula that it owned. *Id*. at ¶ 13. Weyerhaeuser expressed interest in working with Pet Project to develop its product and to jointly market the product with the THRIVE material. *Id*. at ¶ 11. Weyerhaeuser directed Pet Project to a specific manufacturing processor familiar with the THRIVE product, United Plastic Molders, Inc. ("UPM"). *Id*. at ¶ 12.

Starting in 2016, Pet Project used THRIVE material in the Pet Platter product. *Id*. at ¶¶ 7, 14. UPM manufactured the Pet Platter and included labeling that advertised the product as "Food Safe, BPA Free, Made in USA, Dishwasher Safe, Sustainable, Recyclable and 100% SFI (Sustainable Forestry Initiative) Compliant." *Id*. at ¶ 14. Pursuant to Pet Project's earlier discussions with Weyerhaeuser, the Pet Platter also referred to the THRIVE composite in its marketing and packaging materials. *Id*. at ¶ 16.

Pet Project used Weyerhaeuser's THRIVE material until 2018. *Id*. at ¶ 24. Before 2018, UPM had not experienced any production difficulties working with THRIVE in manufacturing the Pet Platter. *Id*. at ¶ 15. The Pet Platter was a

successful product for Pet Project, with orders in the thousands of dollars in the first year of sales and an increase of 300% by its second year in 2017. *Id*. at ¶¶ 17, 18.

**Defendant's Acquisition of Weyerhaeuser**

In December 2016, Pet Project learned that Defendant, International Paper Company (IP) would acquire the cellulose division and certain assets from Weyerhaeuser, including the THRIVE material formulation. *Id*. at ¶ 20. Pet Project expressed concern to IP about the acquisition and continued supply of THRIVE. *Id*. at ¶ 21. IP told Pet Project that (a) it would continue to be responsible for producing and overseeing the quality of THRIVE material; (b) the mixture comprising THRIVE would remain the same; (c) members of Weyerhaeuser's THRIVE team would continue to be employed by IP; and (d) the transition from Weyerhaeuser would be "seamless" in connection with the supply to Pet Project of THRIVE. *Id*. at ¶ 22.

**Problems with the Pet Platter**

Pet Project alleges that in 2018, its manufacturer, UPM, began using the supply of THRIVE provided by IP for Pet Project. *Id*. at ¶ 24. Soon thereafter, customers complained to Pet Project about the quality of its products. *Id*. In addition, Pet Project observed undispersed cellulose fibers in the product. *Id*. at ¶ 25. Pet Project immediately informed IP of these issues. *Id*. Defendant initially thought an improper moisture content was responsible and promised that a newly introduced quality control plan would address the problem. *Id*. at ¶ 27-28.

Pet Project and UPM continued to encounter problems including striations on the surface, discoloration, surface puffing, burn marks, and issues leading the

product to function defectively. *Id*. at ¶¶ 32–33. After investigating, IP recommended Pet Project to change manufacturers as a solution to the problem. *Id*. at ¶ 34. On IP's advice, in October 2018 Pet Project changed manufacturers from UPM to a company recommended by IP, Tailor Made Products ("TMP"). *Id*. at ¶¶ 35, 37.

TMP experienced the same problems in the manufacture of the Pet Platter with the THRIVE material from IP. *Id*. at ¶ 38. In July 2019, with short notice and no assistance in procuring another product, IP advised Pet Project and other THRIVE customers that it would discontinue its production and supply of THRIVE material. *Id*. at ¶ 41. In doing so, Defendant refused to allow other manufacturers to produce the THRIVE product for Pet Project's use.[1] *Id*.

## II.    Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all

---

[1] Pet Project discussed its lost profits with IP. *Id*. at ¶ 42. In response, IP required Pet Project to engage in a compensation negotiation process. *Id*. at ¶¶ 44–46. Pet Project gathered records for IP's negotiation process and provided a complete report on February 10, 2020. *Id*. at ¶ 47. On December 7, 2020, IP offered $10,000 to compensate Pet Project for its losses—much below what it was owed—and then apparently concluded the compensation negotiation process. *Id*. at ¶ 52.

4

well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III.    Analysis

Pet Project claims that it suffered damages because IP changed the THRIVE blend and concealed that it did so, causing defects in Pet Project's product. Pet Project files a three-count complaint. First, under the ICFA, Pet Project alleges that IP engaged in unfair and deceptive conduct. Second, Pet Project alleges that IP breached its contracts with UPM and then with TMP. Pet Project asserts that as a third-party beneficiary of those contracts, it suffered damages via those breaches. And third, in the alternative, Pet Project alleges that Defendant has been unjustly enriched

because Pet Project paid for IP's THRIVE blend to the two manufacturers to produce its products and IP has retained that benefit, to Pet Project's detriment. Defendant seeks dismissal of each count. The Court addresses each count in turn.

1. **Count One: Illinois Consumer Fraud and Deceptive Business Practices Act**

Pet Project asserts that IP's omission or concealment of a material facts constitutes deception and unfair practice under the ICFA. Defendant responds that Pet Project has no standing to bring an ICFA claim because Pet Project is not a consumer as defined by the Act, but rather an unprotected business purchaser; and Pet Project fails to meet the required consumer nexus test under the derivative standing test. Defendant also asserts that Pet Project fails to sufficiently plead facts showing Defendant's conduct occurred primarily and substantially in Illinois.

a. *"Consumer" and the "Consumer-Nexus" Test under the ICFA*

The ICFA makes actionable any "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation … of any material fact… in the conduct of any trade or commerce…." 815 ILCS 505/2. Any "person", including a corporation, may bring an action for damages suffered as a result of violation of the Act. 815 ILCS 505/1(e). A "consumer" is any person who purchases merchandise "not for resale in the ordinary course of his trade of business." *Id.* It is well-settled that a business can be a consumer entitled to bring suit under the Act. *See Skyline Int'l Dev. v. Citibank, F.S.B.*, 302 Ill.App.3d 79, 85 (1st Dist.1998). However, a business purchaser, one that merely resells a product, is not a consumer. *See MacNeil Automotive Products, Ltd.*

6

*v. Cannon Automotive Ltd.*, 715 F.Supp.2d 786, 793 (N.D. Ill. 2010) ("MacNeil sought to resell the floor mats to carmakers and thus is not a consumer."); *Pressalite Corp. v. Matsushita Elec. Corp. of America*, 2003 WL 1811530 at *10 (N.D. Ill. Apr. 4, 2003) ("The fact that Pressalite purchased component parts from Matsushita does not render it a consumer under the Act"). *Compare Lefebvre Intergraphics v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1369 (N.D. Ill. 1996) (finding that Plaintiff bought Defendant's printing press for its own use and not for resale in the ordinary course of its business.); *Labella Winnetka, Inc. v. Gen. Cas. Ins. Co.*, 259 F.R.D. 143 (N.D. Ill. 2009) (finding that Plaintiff is a consumer where it purchased Defendant's insurance services for its own use and not for resale.); *Commonwealth Ins. Co. v. Stone Container Corp.*, 2001 WL 477151, *4 (N.D. Ill. May 3, 2001) (same).

IP argues that as a business purchaser, Pet Project does not have standing under ICFA. Pet Project purchased THRIVE in order to pass it directly on to consumers; Pet Project admits that "the THRIVE material is *the only* material used to make Pet Project's products. It is essentially, Pet Project's product; it just hasn't been shaped yet." Dkt. 16 at 10 (emphasis in original). Pet Project did not purchase IP's material as a consumer but to have manufactured for purposes of resale in the ordinary course of business. *See MacNeil Automotive*, 715 F. Supp. 2d at 794.; *Tile Unlimited, Inc. v. Blanke Corp.,* 788 F. Supp. 2d 734 (N.D. Ill. 2011) (finding that plaintiff was not a consumer where it used defendant's product—a substance that

7

helped tile lay flat to a surface--as an inseparable component of its final product sold to consumers). Pet Project does not qualify as a consumer under this scenario.[2]

However, that does not end the inquiry. A business purchaser may bring a claim under the ICFA if it can satisfy the "consumer nexus test". This requires a business purchaser to allege that a defendant's conduct was directed to the market or otherwise implicates consumer protection concerns, in other words Pet Project must allege a nexus between the alleged fraud and injury to consumers. *See Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996). One court has explained that "[t]o satisfy the consumer nexus test at the pleading stage, a plaintiff must plead (1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendant's representations concerned consumers other than plaintiff; (3) how defendant's particular action involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *CHS Acquisition Corp. v. Watson Coatings, Inc.*, No. 17-CV-4993, 2018 WL 3970137, at *12 (N.D. Ill. Aug. 20, 2018).

Pet Project has not sufficiently alleged that Defendant's conduct implicates consumer protection concerns. Pet Project argues that buyers of its Pet Platter observed failed quality of the product and demanded refunds or replacement of the product. Dkt. 1 at ¶ 24. Courts agree that business consumers citing to complaints from consumers as the end users do not establish an adequate consumer nexus. *See*

---

[2] Pet Project does not argue that it qualifies as a consumer under the definition required in the Act, (Dkt. 16 at 5), and therefore waives this argument. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012). Pet Project instead focuses on the question whether it meets the consumer nexus test.

*Kingsford Fastener, Inc. v. Koki*, No. 00-CV-7395, 2002 WL 992610 (N.D. Ill. May 15, 2002) at *3 ("A consumer nexus is not established, however, simply because consumers are the ultimate users of the products at issue"); *see also Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 807 (N.D. Ill. 1996) ("if allegations [that the product will ultimately reach consumers] are sufficient to bring the claim within the ambit of [ICFA], the Act would apply to nearly all commercial transactions, a result contrary to the intent of the legislature as presently interpreted."); *Tile Unlimited*, 788 F. Supp. 2d at 740 (same); *Onvi, Inc v. Radius Project Dev., Inc.*, No. 19-CV-3201, 2020 WL 4607242 (N.D. Ill. Aug, 8, 2020) at *6 (same). The problem is that such a scenario would convert every breach of contract claim into a potential claim under the Illinois Consumer Fraud Act. As observed by other courts, that result would be contrary to the intent of the legislature.

Pet Project likewise has not plausibly alleged that Defendant's conduct was directed to the market generally. Pet Project relies on the allegation that IP supplied THRIVE to a variety of other customers, including Ford Motor Company, and alleges that IP failed to inform it, Ford and others about the change in formulae. Dkt. 1 at ¶ 61. Plaintiff asserts that IP gave THRIVE business customers short notice that it was discontinuing its production of THRIVE and subsequently refused to allow other manufacturers to produce the THRIVE product for Pet Project's use. *Id*. at ¶ 41. The problem is that all of this conduct by IP was directed to other business purchasers of THRIVE, not consumers. Pet Project has thus not plausibly alleged that IP's conduct was directed towards the general market. *See Tile Unlimited*, 788 F.Supp.2d 734 at

9

740 ("The complaint alleges only that Defendants' false representations about Uni-Mat Pro were directed toward Tile Unlimited "and other tile installers," not to end consumers. Tile Unlimited thus has not alleged that Defendants' conduct was directed toward the market.") (internal citations omitted); *see also Beatty v. Accident Fund Gen. Ins. Co.*, No. 17-CV-01001, 2018 WL 3219936 at \*10 (S.D. Ill. July 2, 2018) (defendant's conduct did not target the market generally rather defendants were failing to pay medical providers and concealing their failure to do so by various means). *Compare Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41 (Ill. App. 2d. 1989) (the consumer nexus test met "where plaintiff has alleged defendant published false information about [plaintiff's] prices for services," and that conduct was directed toward the market generally.) The ICFA is intended to protect *consumers;* therefore, courts focus on where the defendant's conduct is directed. *See Harris v. JAT Trucking of Ill., Inc.*, 2009 WL 2222740 at \*9 (C.D. Ill. July 24, 2009) (consumer nexus test not satisfied where the "allegedly false statements were made to Plaintiff and other employees, not to the general public"); *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.Supp.2d 704, 711–12 (N.D. Ill. 2006) (plaintiff failed to allege the necessary nexus where the letters sent by defendant were not directed to the market generally but only sent to seven of plaintiff's customers.).

Pet Project has not sufficiently pled standing under the "consumer-nexus" test.

### b. *Illinois Extraterritorial Doctrine*[3]

The ICFA has limited territorial reach and does not "apply to fraudulent transactions which take place outside Illinois." *Avery,* 835 N.E.2d at 853. A plaintiff must allege "circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id*. There is "no single formula or bright-line test for determining whether a transaction occurs within [Illinois]." *Id* at 854. Factors to consider include "(1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints about the goods or services were to be directed." *International Equip. Trading Ltd. v. Illumina, Inc.*, 312 F.Supp.3d 725, 733 (N.D. Ill. 2018) (citing *Avery* at 854-855).

Pet Project has failed to allege that any of the events or omissions alleged here occurred primarily and substantially in Illinois. Pet Project responds that it is an Illinois resident and relying on *Haught v. Motorola Mobility, Inc.*, 2012 WL 3643831 (N.D. Ill. Aug. 23, 2012), asserts that an Illinois resident need not show that the circumstances relating to the disputed transaction occurred primarily and substantially in Illinois. However, "the law is [] clear that even an Illinois resident

---

[3] Pet Project is not a "consumer" under ICFA. The court will allow Plaintiff to file an amended complaint if it is able to plausibly assert that it satisfies the "consumer nexus" test. If it does, it will also have to plead facts to plausibly allege the events are connected to Illinois.

must show that the disputed transaction occurred 'primarily and substantially in Illinois.'" *Archey*, 2022 WL 3543469, at *5. *See also Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 749 (C.D. Ill. 2020) (dismissing Illinois resident's ICFA claim where transaction did not occur primarily and substantially in Illinois); *International Equip.*, 312 F. Supp. at 733 (finding that plaintiff's Illinois residency alone is insufficient to allege Illinois nexus under the ICFA); *see also Archey v. Osmose Utilities Services, Inc.*, No. 20-cv-05247, 2022 WL 3543469 (N.D. Ill. Aug. 18, 2022) at *5 (same).

Significantly to this inquiry, the complaint does not indicate any location for any of the alleged misrepresentations forming the basis of Count I. The complaint does allege that Defendant does business in Illinois. This is not sufficient to allege a claim under the ICFA.[4] At this stage, this is a separate basis to dismiss Pet Project's consumer fraud claims.

### 2. Count Three: Breach of Contract[5]

---

[4] Pet Project responds: "Obviously, International Paper conducts business in Illinois and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Illinois." (Dkt. 16 at 12). The Court reminds Plaintiff that the *allegations of fraud* in an ICFA claim are subject to the heightened pleading requirements of Fed. R. Civ. Pro Rule 9(b). "Claims of deception under the ICFA are analyzed under the heightened pleading standard of Rule 9." *Arora v. Diversified Consultants, Inc.*, No. 20 C 4113, 2021 WL 2399978, at *6 (N.D. Ill. June 11, 2021) (citations omitted).

[5] Defendant argues Pet Project may not proceed simultaneously on its consumer fraud and breach of contract claims as they are premised on the same facts. The Court disagrees. In Illinois, a breach of contract, without more, is not actionable under ICFA. *See Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 844 (Ill. 2005). However, where a plaintiff alleges facts separate from a breach of contract that implicate a fraud, the two claims may proceed simultaneously. *See Burress-Taylor v. American Sec. Ins. Co.,* 980 N.E.2d 679 (Ill. App. Ct. 2012) (finding separate consumer fraud and breach of contract claims); *see also Miles v. American Honda Motor Co., Inc.,* No. 17 C 4423, 2017 WL 4742193 (N.D. Ill. October 19, 2017) (same). Pet Project alleges in Count I that that Defendant's concealment of its change of the THRIVE formula caused it to incur damages. Dkt. 1 at ¶¶ 68–79. This stands in contrast to Pet Project's breach of contract claim that alleges Defendant breached its contract with TMP and UPM, of which Pet Project purports to be an intended beneficiary, by failing to provide the quality of the material it promised. *Id.* at ¶¶ 87–92.

Pet Project relies on purchase orders and invoices between Defendant and either UPM or TMP to assert a breach of contract claim. Defendant argues that Pet Project has failed to allege that it is a third-party beneficiary of these contracts and, therefore, cannot assert a breach of contract claim. (Dkt 12 at 11-13).

Under Illinois law, "there is a strong presumption that parties to a contract intend that the contract's provisions apply to only them and not to third parties. To overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Admiral Indem. Co. v. Otis Elevator Co.*, No.20 CV 04597, 2021 WL 4306145 at \*2 (N.D. Ill. Sept. 22, 2021) "That the contracting parties know, expect or even intend that others will benefit from their agreement is not enough to overcome the presumption." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009). Instead, "[i]t must appear from the language of the contract that the contract was made for the direct, not merely incidental, benefit of the third person." *Id.* However, "[i]t is not necessary that a contract for the benefit for a third party identify [the party] by name. The contact may define a third party by description of a class." *Altevogt v. Brinkoetter*, 421 N.E.2d 182, 187 (Ill. 1981). Without a third-party beneficiary status, "a litigant lacks standing to attack an assignment to which he or she is not a party." *Bank of Am. Nat'l Ass'n v. Bassman FBT, LLC*, 981 N.E.2d 1, 15 (Ill. App. Ct. 2012).

Pet Project's complaint asserts that it is the third-party beneficiary of the purchase orders between UPM or TMP and Defendant to produce the THRIVE

13

composite. Dkt. 1 at ¶ 92. To support this claim, Pet Project attaches copies of invoices between UPM and TMP and Defendant. Dkt. 1-2.

A brief review of the purchase orders and invoices makes clear that these contracts cannot reach the high bar set by Illinois courts. Although the purchase orders need not name Pet Project, it must plausibly allege that the contracts contain an "express declaration" that the contract was made for the direct benefit of Pet Project. *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E. 2d 106, 107 (Ill. App. Ct. 1989). The complaint cannot make these allegations because the documents do not support such an inference. In addition, Pet Project relies on a 2016 letter from Weyerhaeuser to Pet Project as evidence that it was the intended beneficiary of Defendant's contracts with UPM or TMP. This is not a contract between Defendant and UPM or TMP nor does it contain an express declaration that any such contract was made for the benefit of Pet Project. The complaint fails to sufficiently allege that Pet Project was the intended third-party beneficiary of the contracts between Defendant and UPM or Defendant and TMP and thus, the breach of contract claim is dismissed.

### 3. Count Two: Unjust Enrichment

Pet Project alleges that it conferred a benefit on IP by paying for its THRIVE blend to manufacture its products and IP retained that benefit, to the detriment of Pet Project who received defective product that was manufactured using a defective derivative of THRIVE. Dkt. 1 at ¶¶ 81-83. This claim is pled in the alternative to Pet Project's breach of contract claim (Count Three). IP argues that Pet Project's unjust enrichment claim should be dismissed because in Illinois, an unjust enrichment claim

14

is not a separate cause of action and should Pet Project's ICFA claims fail, then the unjust enrichment claim also fails.

In Illinois, unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant retains a benefit to the plaintiff's detriment, and this retention is unjust due to some improper conduct by the defendant. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). There must be some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty. *See Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869, 877 (Ill. App. Ct. 2003). "So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary*, 656 F.3d 511 at 517. *See also G.O.A.T. Climb & Cryo, LLC v. Twin City Fire Ins. Co.*, 548 F. Supp. 3d 688, 701 (N.D. Ill. 2021) (where ICFA claim dismissed, unjust enrichment claim was dismissed as well).

Because the court is dismissing Pet Project's breach of contract and consumer fraud claims, Pet Project's unjust enrichment claim must also be dismissed.

## IV.    Conclusion

For the stated reasons, Defendant's Motion to Dismiss [11] is granted. Pet Project's complaint is dismissed without prejudice. Pet Project may file an amended complaint if it believes it can do so in strict compliance with this opinion. Any amended complaint is due January 27, 2023. If no amended complaint is filed, this case will be dismissed, and judgment will enter.

15

ENTER:

Dated: January 10, 2023

MARY M. ROWLAND
United States District Judge