IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Our Pet Project LLC,<br><br>Plaintiff,<br><br>v.<br><br>International Paper Company,<br><br>Defendant. | Case No. 22-cv-1209<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Our Pet Project, LLC, brings an amended complaint against Defendant, International Paper Company, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA" or the "Act"), common law fraud, and breach of contract. Defendant moves to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendant's Motion to Dismiss [33] is granted.

I. Background

In this case Our Pet Project, LLC ("OPP") alleges that International Paper Company ("IP") engaged in deceptive business practices in producing a material that OPP used in its sustainable pet feeding tray product. This Court previously dismissed OPP's three-count original complaint which claimed a violation of ICFA, breach of contract and unjust enrichment. Dkts. 1, 28. As to the ICFA claim, the Court ruled that OPP is not a "consumer", but permitted OPP to file an amended complaint if it could allege it satisfies the "consumer nexus" test. *Id.* at 11, n.3.

1

OPP has now filed a five-count amended complaint for: violations of the ICFA (Counts I and II), common law fraud (Count III), third party beneficiary breach of contract (Count IV) and breach of contract (Count V). Dkt. 29.[1] IP again moves to dismiss, and now also argues that OPP has unnecessarily and vexatiously multiplied these proceedings, warranting fees and costs in IP's favor.

**II. Standard**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to

---

[1] This order assumes familiarity with the relevant facts in this case as described in the Court's prior Order. *Our Pet Project v. Int'l Paper Co.*, No. 22-cv-1209, 2023 WL 143224 (N.D. Ill. Jan. 10, 2023). The Court need not recite all the allegations in the amended complaint as many of the relevant facts remain unchanged.

2

be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Analysis

IP argues that OPP's complaint should be dismissed for several reasons. First, OPP was only given leave to amend its ICFA claim, so OPP should not be permitted to allege the other claims in the amended complaint. Second, OPP's reasserted claims fail for the same reasons the Court previously dismissed them. Third, OPP's fraud claim is not sufficiently pled. And fourth, OPP cannot sustain a breach of contract claim where no contract exists. The Court addresses each of these arguments in turn.

#### A. Leave to Amend

IP first argues that this Court should only consider OPP's amended ICFA claims as this Court did not grant OPP leave to file the other claims. *Our Pet Project*, 2023 WL 143224 at * 7 ("Pet Project may file an amended complaint if it believes it can do so in strict compliance with this opinion."). However, the Court's prior opinion dismissed without prejudice the complaint and did not specify that only the ICFA claim could be amended. Although the Court required OPP's compliance with its

opinion, Rule 15(a)(2) allows amendments to pleadings "when justice so requires." *See also Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. Of Med. Specialties*, 15 F. 4th 831, 835 (7th Cir. 2021) (noting that Rule 15(a)(2) takes a "liberal approach to granting leave to amend"). Despite IP's assertions that OPP is acting in bad faith, the Court does not find any evidence or indication that OPP is pursuing its newly alleged claims in bad faith. The more proper course may have been for OPP to request leave to file an amended complaint that added entirely new claims. But OPP is permitted to file an amended complaint, and the Court will consider it.

### B. ICFA – Count I

ICFA makes actionable any "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation…of any fact… in the conduct of any trade or commerce…" 815 ILCS 505/2. The protections of the ICFA are primarily meant to protect "consumers." *See Roppo v. Travelers Cos.,* 100 F. Supp. 3d 636, 650 (N.D. Ill. 2015) (citing *Bank One Milwaukee v. Sanchez,* 783 N.E.2d 217, 220 (Ill. App. Ct. 2003)). A consumer is defined in the ICFA as "any person who purchases or contracts for the purchase of merchandise *not for resale* in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e) (emphasis added).

In Count I of the operative complaint, OPP alleges that it is "a 'consumer' of 'THRIVE' under the definition of the [ICFA]." (Am. Compl. ¶¶ 103). In its response brief, OPP focuses on whether a plaintiff must suffer a "public injury". (Dkt. 36 at 3-

4

5).[2] But OPP does not address the established case law that a *business* that purchases parts or materials for inclusion in a product is not "a consumer" under the Act. *See MacNeil Automotive Products, Ltd. v. Cannon Automotive Ltd.*, 715 F.Supp.2d 786, 793 (N.D. Ill. 2010); *Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, No. 2-cv-7086, 2003 WL 1811530 at *10 (N.D. Ill. Apr. 4 2003) (the "fact that Pressalite purchased component parts from Matsushita does not render it a consumer under the Act"); *CHS Acquisition Corp. v. Watson Coatings, Inc.*, No. 17-CV-4993, 2018 WL 3970137, at *13 (N.D. Ill. Aug. 20, 2018) (denying a Rule 15 motion to amend a complaint, collecting cases and explaining company was not a "consumer" and also did not satisfy the consumer nexus test).

OPP's argument that the Court should find that it is a "consumer" are not convincing. OPP cannot simply assert that it is a consumer. The facts alleged, taken as true and in the light most favorable to OPP, establish that it is a business purchasing product for resale. The Court affirms its previous finding that, as a matter of law, OPP is not a "consumer" under ICFA. Count I is dismissed with prejudice.

### C. ICFA –Count II

OPP pleads Count II in the alternative to Count I "to address the assumption that a successful consumer Fraud Act claim must allege a 'public injury'". (Dkt. 36 at 6). This is a non-starter. OPP either has standing under ICFA or it does not. As stated above, OPP is not a consumer as required by the statute.

---

[2] This line of argument is not relevant or responsive to any argument raised by Defendant.

The law also allows a plaintiff to sue under ICFA if it satisfies the consumer nexus test. To satisfy the consumer nexus test at the pleading stage, a plaintiff must plead "(1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendant's representations concerned consumers other than plaintiff; (3) how defendant's particular action involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Thrasher-Lyon v. Ill. Farmers. Ins. Co.,* 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) (internal alterations and citations omitted). *Tile Unlimited, Inc. v. Blanke Corp.,* 788 F. Supp. 2d 734, 739 (N.D. Ill. 2011) (a non-consumer may bring a claim under ICFA if defendants "have engaged in conduct that is either directed toward the market or otherwise implicates consumer protection concerns") (internal quotation marks and citation omitted). This Court previously ruled that OPP had not sufficiently alleged that IP's conduct implicates consumer protection concerns or that its conduct was directed to the market generally. *See Our Pet Project*, 2023 WL 143224, at *4. OPP has again failed to meet this standard.

OPP contends that "the consumer protection nexus only comes into play … in cases that appear to be routine breach of contract actions." Dkt. 36 at 5 (quotations omitted). It is not entirely clear what OPP means by this argument. The consumer protection nexus broadens standing under ICFA. It allows actions under ICFA that would not otherwise be allowed in order to protect consumers. The consumer nexus doctrine determines which parties have standing to sue under the ICFA. *See Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996).

6

OPP has not alleged that IP made any representations to the market, only towards OPP itself and other customers such as Ford Motor Company.[3] The Court previously found this is insufficient, and OPP has not alleged any different facts that convince this Court otherwise. *See generally Kingsford Fastener, Inc. v. Koki*, No. 00-CV-7395, 2002 WL 992610 at *3 (N.D. Ill. May 15, 2002) ("A consumer nexus is not established, however, simply because consumers are the ultimate users of the products at issue"); *Harris v. JAT Trucking of Ill., Inc.*, 2009 WL 2222740 at *9 (C.D. Ill. July 24, 2009) (consumer nexus test not satisfied where the "allegedly false statements were made to Plaintiff and other employees, not to the general public").

OPP relies on *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12 (2003) for the proposition that the consumer nexus test was removed in an amendment to ICFA, but that case concerned legislation concerning auto dealers and did not alter the consumer nexus test. OPP also relies heavily on *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004). But the *Garrity* court affirmed the dismissal of the complaint because, like OPP, the plaintiff's "only use of the purchased product is as an input into the making of a product that [it] sells…" As explained in *Hashmi v. 7-Eleven, Inc.*, No. 19 C 4090, 2020 WL 586822 (N.D. Ill. Feb. 6, 2020), although ICFA has been amended, "courts do not construe the amendment as eliminating the required connection to consumers." *Id.* at *2 (cleaned up). *See Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 595—96 (7th Cir. 2017) (discussing

---

[3] OPP asserts that IP began to "supply many consumers, including Plaintiff, with the THRIVE material mixture." Amend. Compl. ¶ 39. Such an assertion does not satisfy Rule 9(b) pleading requirements for fraud allegations.

7

ICFA and explaining "it is not [our] role to break new ground in state law.") (citation omitted).

OPP has not sufficiently pled standing under the "consumer-nexus" test. Count II is dismissed with prejudice.

### D. Common Law Fraud – Count III

IP argues that OPP has failed to allege a claim for common law fraud, whether the claim is one of fraudulent concealment or fraudulent misrepresentation.

To state a fraud claim, a plaintiff must allege "(1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *Kraft Foods Grp., Inc. v. SunOpta Ingredients, Inc.*, No. 14-cv-9419, 2016 WL 5341809, at *2 (N.D. Ill. Sept. 23, 2016). OPP does not dispute that Rule 9(b)'s heightened standard applies to fraud claims. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *See also Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 856 (N.D. Ill. 2021) ("a complaint must describe the who, what, when, where, and how of the fraud.") (cleaned up).

A fraudulent concealment claim requires the elements of fraudulent misrepresentation as well as a showing that the defendant "was under a duty to disclose to the plaintiff." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). A duty to disclose can arise in two contexts: (1) a special trust relationship

8

arising from a "situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff," *ibid.*; *see Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 738 (7th Cir. 2017) ("[T]he defendant accused of fraudulent concealment must exercise overwhelming influence over the plaintiff. ...."); and (2) where "silence combined with deceptive conduct ... results in active concealment" of a material fact, *Greene v. Mizuho Bank, Ltd.*, 206 F. Supp. 3d 1362, 1374-75 (N.D. Ill. 2016) (quoting *Henderson Square Condo. Ass'n v. LAB Townhomes, L.L.C.*, 16 N.E.3d 197, 217 (Ill. App. 2014)).

IP first argues that OPP cannot maintain a claim for fraudulent concealment as OPP has not alleged that a confidential or fiduciary relationship exists such that IP had a duty to disclose a material fact. OPP argues that though there is not a formal fiduciary relationship between the parties, OPP has placed its trust and confidence in IP thereby placing IP in a position of influence and superiority over it. OPP further states that IP's assurances concerning the quality control of THRIVE following its acquisition from Weyerhaeuser show that IP was in a position of influence and superiority over OPP. However, this relationship is not a fiduciary relationship in Illinois. "Illinois courts have consistently held that arms' length business transactions … generally do not give rise to a special relationship and concomitant duty to speak." *Williams-Ellis v. Mario Tricoci Hair Salons & Spas*, 2007 WL 3232490, at *8 (N. D. Ill. Nov. 1, 2007); *see also Onvi, Inc. v. Radius Project Dev., Inc.*, 19-cv-3201, 2022 WL 540796 at *7 (N.D. Ill. Feb. 23, 2022) ("[T]he record indisputably

9

shows that [the parties] engaged in an arm's length transaction in which no duty to disclose could have arisen.).

OPP only ever received THRIVE from its manufacturers UPM and TMP and not IP. (Am. Compl. ¶¶ 20–24). OPP cites *Doe v. Boy Scouts of Am.*, 66 N.E.3d 433, 457 (Ill. 2016) for the proposition that the question of the parties' fiduciary relationship must be decided by the factfinder. But *Doe* was decided on summary judgment, and in fact, other cases have dismissed a claim for fraudulent concealment on a motion to dismiss. *See Wigod,* 673 F.3d at 571 (affirming dismissal of fraudulent concealment claim for failing to establish special relationship); *Toulon* 877 F.3d at 739 (7th Cir. 2017) (same). OPP has failed to state a claim for fraudulent concealment.

Similarly, OPP has failed to state a claim for fraudulent misrepresentation. IP argues that OPP's fraudulent misrepresentation claims hinge on non-actionable promises of future intent. Illinois law generally does not allow actions for promissory fraud, "meaning that the alleged misrepresentations must be statements of present or preexisting facts, and not statements of future intent or conduct." *In Re Estate of Shapiro*, 2019 IL App (1st) 180595, at *12 (Ill. App. Jan. 25, 2019) (citation omitted). OPP does not dispute that this is the law.

OPP alleges that IP told it "that the mixture comprising THRIVE would remain the same as it had when produced by Weyerhaeuser, and there would be no changes to the product… and told Plaintiff that THRIVE would be the exact same material and quality that Weyerhaeuser had previously provided." Am. Compl. at ¶ 34. These are statements of future intent. OPP has not alleged that IP made these

10

statements knowing they were false. As IP argues, OPP has not alleged sufficient facts that IP *knowingly* made false statements. OPP relies on statements concerning manufacturing issues that were discovered after the representations were made. Am. Compl. ¶¶ 67, 93–94, 142. These after-the-fact statements are not enough to state a claim. *See Biggers Holdings LLC v. Garcia*, No. 21-cv-4680, 2022 WL 3107617 at *6 (N.D. Ill. Aug. 4, 2022) (dismissing fraud claim where the facts alleged in the complaint suggested that defendants may have only learned of the product defect after it was marketed and sold to plaintiff.).

Ultimately, OPP does not counter IP's argument that OPP could not have relied on the alleged false statements. These alleged false statements were made in the same month that IP permanently took THRIVE off the market. (Am. Compl. ¶ 67). As such, OPP cannot allege that it relied on these false statements as it could not have purchased more of the THRIVE material.

OPP has failed to allege a claim for common law fraud and it is dismissed with prejudice.

### E. Breach of Contract and Third-Party Beneficiary – Counts IV and V

Finally, IP argues that OPP has failed to state a claim under its breach of contract and third-party beneficiary theories. This Court agrees.

OPP alleges a theory for third-party beneficiary in Count IV. This Court has already rejected this argument, and OPP offers no new facts to support a claim for third-party beneficiary breach of contract. As this Court previously explained, under Illinois law, "there is a strong presumption that parties to a contract intend that the

contract's provisions apply to only them and not to third parties. To overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Admiral Indem. Co. v. Otis Elevator Co.*, No.20 CV 04597, 2021 WL 4306145 at *2 (N.D. Ill. Sept. 22, 2021). OPP here fails to allege an express declaration. In all the communications OPP attaches, it does not show an express declaration that it is an intended beneficiary of the contract existing between IP and UPM or TMP. These emails at most show that IP had knowledge that OPP would benefit from the contract but in Illinois, it is not enough that the contracting parties know, expect, or even intend that others will benefit from their agreement, it must be an express declaration. *See Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009).

As for OPP's newly raised breach of contract claim in Count V, this also fails as OPP has failed to allege the existence of a valid and enforceable contract between itself and IP. Under Illinois law, a breach of contract claim "must be predicated on a valid and enforceable contractual obligation and whether a contract exists is a matter of law for determination by the court." *Pniewski v. U.S. Bank Nat'l Assoc.*, 13-cv-3638, 2014 WL 1052813 at *5 (N.D. Ill. Mar. 19, 2014) (citation omitted). IP argues that there was no offer or acceptance, no intent to be bound, no consideration or definite and certain terms.

OPP's sole argument is that under the UCC § 2-201, an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances. Ill. St. Ch. 810 § 2-206. OPP states that there are

12

two emails that show an express declaration that the contracts were intended for its benefit. (Am. Compl. ¶ 157.) However, as IP argues, the language OPP refers to is more akin to a contract for *services* and thus, not governed by the UCC. Specifically, the emails in question show IP sending information that OPP requested concerning a THRIVE batch in June 2019 (Dkt. 29-3) and IP scheduling a meeting with OPP to discuss issues about a batch of THRIVE due in June 2018 (Dkt. 29-4). In any event, IP is correct, the cited language does not show an offer, acceptance, consideration, or intent to be bound. The emails establish that OPP and IP communicated concerning the issues with the THRIVE batches. They do not create a contract. As such, OPP has failed to state a breach of contract claim. Any breach of contract claim is dismissed with prejudice.

### F. IP's Request for Fees and Costs

IP seeks reasonable attorneys' fees and costs as the prevailing party on this motion pursuant to 815 ILCS 505/10a(c). In ruling on such a request, courts consider the relative merits of the parties' positions, whether an award would deter future bad faith conduct and whether the plaintiff's claims were brought in bad faith. *Krautsack v. Anderson*, 861 N.E.2d 633, 557–58 (2006). The Court in its discretion denies IP's request. As previously discussed, there is no evidence or indication of bad faith on OPP's part. OPP's arguments in its response brief were not persuasive and at points were difficult to understand. Its reraising a breach of contract under a theory of a third-party beneficiary borders on sanctionable conduct. It raised this issue without any new facts warranting a change in outcome, and OPP's characterization of some

13

of the case law was not accurate. However, in its discretion, the Court does not find the circumstances rise to the level warranting a sanction against OPP in the form of an award of fees and costs to IP.

## IV.   Conclusion

For the stated reasons, Defendant's Motion to Dismiss [33] is granted. As any further amendment would be futile and OPP has not requested further amendment, the amended complaint is dismissed with prejudice. *See Ass'n of Am. Physicians & Surgeons*, 15 F.4th at 835. Civil case terminated.

E N T E R:

Dated: June 30, 2023

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States District Judge